**Affirmed and Memorandum Opinion filed August 31, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00205-CR

**OSCAR RAMIREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1681667**

## MEMORANDUM OPINION

Appellant Oscar Ramirez appeals his conviction for aggravated sexual assault of a child, arguing that his attorney provided ineffective assistance of counsel when he did not call character witnesses during the guilt/innocence phase of trial. The State raises one cross-issue, asserting that the trial court erroneously denied its right to give the concluding address to the jury in the punishment phase of trial. We affirm.

## I. BACKGROUND

Appellant attended a gathering at a home belonging to friends of friends, which lasted until the early hours of the morning. It was the first time that appellant had visited this home or met its owners.

While the eight adults present at the gathering socialized in the backyard with drinks, the eight children played in the swimming pool or living room. One of the owners' daughters was nine-year-old Jane,[1] who was born with cerebral palsy. Jane has upper body mobility but uses a walker or walking sticks to get around. Around 3:00 a.m., Jane took a shower with her mother's help and was tucked into bed upstairs. At 4:00 a.m., Jane texted and called her mother. When her mother, Anna, went upstairs, she found Jane in her sister's room, crying and scared.

Anna walked Jane back to her room and asked her what was wrong. Jane responded that "the man that Tia Sandra brought came into my room." Jane described how the man had entered her bedroom, pulled down his pants, and showed her his penis. Jane covered her face with a blanket and told him to stop. But when she told him to stop, the man lifted her blanket, pulled up her nightgown, pulled down her underwear, and placed his mouth and tongue on her vagina. From Jane's description, Anna identified appellant as the perpetrator and called police. Surveillance video from inside the home showed appellant going upstairs at 3:11 a.m., 3:27 a.m., and 3:43 a.m. By about 7:00 a.m., Anna had taken Jane to Texas Children's Hospital for a sexual assault examination.

When police arrived at the home and questioned appellant, appellant at first

---

[1] To protect the complainant's identity, we refer to her by the pseudonym "Jane" *See* Tex. R. Civ. P. 9.10(a)(3); Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"). Similarly, we will refer to her mother with the pseudonym "Anna" to help protect Jane's identity.

denied having gone upstairs. But when the investigating officer informed appellant there was surveillance video depicting him going upstairs, appellant instead said that he went upstairs to use the restroom. The investigating officer then obtained a buccal swab from appellant for use in DNA testing. Subsequent DNA testing included samples from Jane's underwear and revealed a mixture of DNA from two persons on the inside crotch of Jane's underwear. A forensic scientist testified that the possibility the mixture was a combination of Jane's and appellant's DNA was four trillion times more likely than a combination of DNA from Jane and someone else.

A jury found appellant guilty and assessed punishment at twenty-three years' confinement. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, appellant contends that his trial counsel was ineffective because counsel did not call appellant's wife and father as character witnesses during the guilt/innocence phase of trial. Appellant argues the failure of counsel to do so precluded appellant from presenting a defense because the case turned on the credibility of the witnesses, the character witnesses could have offered evidence to show it was improbable appellant committed the offense, and appellant's counsel did not otherwise develop a defense. The State responds that the two interested witnesses' testimony about appellant's character would have had no effect on the outcome of trial and that there is an insufficient record to establish that appellant's counsel acted deficiently.

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove a claim of ineffective assistance, an appellant must establish, by a preponderance of

the evidence, that (1) his counsel's representation fell below the objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We are authorized to analyze the prongs from *Strickland* in the order best suited to review of appellant's issue. *See Strickland*, 466 U.S. at 687; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and was motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814; *Pham v. State*, 595 S.W.3d 769, (Tex. App.—Houston [14th Dist.] 2019), *aff'd*, 639 S.W.3d 708 (2022). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). When the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be

established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992). Counsel's performance is judged by "the totality of the representation," and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. *Robertson*, 187 S.W.3d at 483.

Appellant contends that his sole available defense was the testimony of his wife and father to show that "the actions of which he was accused were not in keeping with his character." Although character evidence is not generally admissible for the purpose of proving conformity of action, Tex. R. Evid. 404(a), an accused in a criminal case is permitted to introduce evidence of a specific good character trait to show it is improbable that he committed the charged offense. *See Wilson v. State*, 451 S.W.3d 880, 886 (Tex. App.—Houston [1st Dist.] pet. ref'd). A defendant charged with aggravated sexual assault is entitled to offer evidence of his good character for moral and safe relations with minors. *See* Tex. R. Evid. 404(a)(1)(A); *Wilson*, 451 S.W.3d at 886.

During trial, appellant's attorney focused on alternative reasons for appellant's presence upstairs at the home and the presence of male DNA on the inside of Jane's underwear. Trial counsel's defensive strategy was to show that appellant, who had been drinking with the other adults, was using the upstairs bathroom—the one used by Jane—to urinate. Trial counsel suggested that Jane may have come in contact with appellant's urine from the toilet seat in that bathroom, which then transferred to Jane's underwear.

During the State's direct examination, Jane's mother, Anna, testified that she "would allow anybody to go into my house, you know, use the restroom, anything." She explained that there is a half bathroom on the first floor of the

house, which the ladies used that night, but the men simply relieved themselves outside in the backyard by a shed. In cross-examination of Anna, appellant's trial counsel established that she did not see appellant go behind the shed to urinate. She testified that she observed appellant go inside her house constantly and thought that "it's his first time at my house, maybe he's embarrassed to use—you know, to relieve himself outside of the—behind the shed, so he's going inside to use the facilities." Trial counsel also cross-examined Anna as to whether she knew if appellant, as a newcomer to her home, knew that it was okay for him to urinate behind the shed, to which she responded "no." He also elicited testimony from her on cross-examination that if the first floor restroom was occupied that she would go to the upstairs restroom, that the upstairs restroom was not locked, and that she did not know whether anyone had told appellant that it was not permissible to use the upstairs restroom.

In addressing DNA evidence, trial counsel cross-examined the forensic scientist from the Harris County Institute of Forensic Sciences ("Harris County Forensics") whose testimony was offered by the State to explain the results of DNA testing. In furtherance of his defensive strategy, appellant's counsel asked the forensic scientist whether a faint yellow stain found on Jane's underwear might be urine. The forensic scientist confirmed that Harris County Forensics does not test for urine, although she agreed it was hypothetically possible that a female could sit on urine drops on a toilet seat and then transfer that urine to her underwear. While the forensic scientist could conclude that the second person's DNA on the inside crotch of Jane's underwear was non-sperm and male, she admitted Harris County Forensics could not confirm the originating source of it. She further testified that "insufficient male DNA was detected" in swabs of Jane's vulva. Finally, the forensic scientist testified that two persons' DNA was also found on the outside of

Jane's underwear, but she could not identify the second person's gender.

Trial counsel also cross-examined the investigating officer who arrived at Jane's home in response to her mother's call to police. During cross-examination, this officer testified that he did not gather Jane's bed sheet or comforter, did not check the bedroom door or furniture for fingerprints, did not try to collect touch DNA, and did not enter Jane's bedroom. As reflected in closing argument, counsel's strategy in questioning the investigating officer was to show that if appellant had entered Jane's room and sexually assaulted her while she was laying in her bed, the sheets and comforter would be the best source of appellant's DNA, and his fingerprints and perhaps DNA would be on the doorknob of her bedroom door.

In addition to the defensive strategy above, appellant's trial counsel highlighted discrepancies in Jane's trial testimony about the perpetrator's clothing versus appellant's clothing as shown on the surveillance video. Jane testified at trial that the perpetrator was wearing a black sweater, black shirt, and gray sweatpants. The surveillance video, however, showed that appellant was wearing a black shirt, jeans, and a hat. Moreover, when asked whether she saw in the courtroom "the person who put their mouth on your clitoris," Jane replied, "No" and thus did not identify appellant.

The record is silent about the reason trial counsel chose not to call appellant's wife and father in the guilt/innocence phase of trial. "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. Jane was the last witness called by the State, and it was a reasonable defensive trial strategy to leave the jury with the indelible image of her inability to identify appellant in the courtroom. Moreover, counsel had already established an

7

alternative scenario for appellant's presence upstairs in Jane's home and for the presence of non-semen, male DNA on the inside of her underwear. Appellant has not shown that he would have benefitted from character testimony from his wife and father and has not overcome the presumption that, under the circumstances, the decision not to call these witnesses at the guilt/innocence phase might be considered sound trial strategy. *See Stokes v. State*, 298 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We conclude that appellant has not established, by a preponderance of the evidence, that his trial counsel's representation fell below the objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88. Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong. *Lopez*, 343 S.W.3d at 144. We overrule appellant's issue.

### III. THE STATE'S CLOSING ARGUMENT

In its cross-issue, the State contends that the trial court erred in disallowing the State the concluding address to the jury in the punishment phase of trial. *See* Tex. Code Crim. Proc. Ann. art. 36.07. The record shows that the State began its closing argument but did not reserve any time for a concluding address. When the State asked for additional time after appellant's closing argument, appellant's counsel objected because "the State did not ask for the right to open and close" and appellant "respectfully believes they've given their closing statement." The trial court sustained this objection.

Having overruled appellant's issue, we do not reach the State's cross-issue. Tex. R. App. 47.1; *see* Tex. Code Crim. Proc. Ann. art. 44.01; *Pfeiffer v. State*, 363 S.W.3d 594, 601 (Tex. Crim. App. 2012). Assuming the State's cross-point is the type of error encompassed by article 44.01, which enumerates the types of error the State may appeal, the State concedes that courts of appeals generally cannot

address cross appeals by the State unless the conviction is reversed. "Usually, courts of appeals may address the State's cross-appeal point only if the defendant prevails on appeal and the case will be remanded for further proceedings." *Id.* (discussing *Armstrong v. State*, 805 S.W.2d 791, 793–94 (Tex. Crim. App. 1991)).

## IV.  CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the trial court as challenged on appeal.

_____/s/ J. Poissant_____
Margaret "Meg" Poissant
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

Do not Publish — Tex. R. App. P. 4702(b).